IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MANJU SHRESTHA and TIANA SANDERS, Individually, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 2:22-cv-02268-MSN-atc ) |
| UNITED STATES POSTAL SERVICE, | ) ) |
| Defendant. | ) ) |

**JOINT MOTION FOR SETTLEMENT APPROVAL**

After arms-length negotiation for over six months, Named Plaintiffs Manju Shrestha and Tiana Sanders and Defendant United States Postal Service have reached a proposed settlement in the above-captioned case. The parties respectfully request that the Court approve their proposed settlement of Plaintiffs' individual FLSA claims seeking unpaid wages and dismiss this case with prejudice. As explained below, the Court should grant this motion because this settlement is a fair, adequate, and reasonable resolution of the parties' *bona fide* dispute as to liability and damages under the FLSA. Additionally, Plaintiffs seek an award of attorney's fees and costs. Defendant does not oppose this request.

**I.  Factual background**

    **A.  Manju Shrestha**

At some point in 2021, Shrestha moved to Memphis and applied to be a temp at the main Memphis USPS building downtown on B.B. King. during the Christmas/holiday rush in November-December 2021. Shrestha's first day as a USPS temp was December 4, 2021, the first

1

day of USPS Pay Period 26. She first worked on December 6, 2021, as she was off December 4 and 5, 2021. She was off every Saturday and Sunday while she worked as a temp for the USPS in Memphis.

The USPS originally intended for Shrestha to work at the B.B. King facility. But because Shrestha was a temp whose position was designed to fit the USPS' specific needs, the USPS moved her to the Partial Select Annex ("PSA") in North Memphis on the mail processing/logistics side. Shrestha could not clock in and out at the PSA because she was not officially assigned to work at the PSA in the time-clock system; she could not clock in and out at the B.B. King location because she was working at the PSA. Sometimes in situations like this, the USPS allows employees to manually record their time on a Form 1261, which a manager then totals and uses to complete a Pay Adjustment Form 2240. Once the USPS receives a Form 2240, the payroll office processes the employee's pay and issues their wages.

On December 29, 2021, Shrestha went to the B.B. King facility and showed the USPS the wire-bound notebook in which she had written all of the hours she worked beginning on December 6, 2021. The USPS used these records to prepare four 1261 and 2240 Forms to submit to payroll so that Shrestha could be paid. By the time these 2240 Forms were submitted on December 31, 2021—Shrestha's last day of temp work with the USPS—the USPS' timekeeping and payroll systems had already terminated Shrestha and removed her from the system. Shrestha's termination from the timekeeping and payroll systems impeded the USPS' ability to pay her until January 2023, when the USPS issued her a check for $5,281.85 in gross wages (and $4,272.08 reflected in the check after taxes).

The settlement agreement includes this $5,281.85 payment as part of Shrestha's backpay. The USPS determined that she was entitled to an additional $12.88 in backpay, which is also

reflected in the settlement agreement. The parties negotiated a compromise regarding the amount of Shrestha's liquidated damages and agreed to $1,000.00 as liquidated damages.

**B.     Tiana Sanders**

Sanders worked at the USPS' Jet Cove facility in Cordova from approximately October 9, 2021 to December 31, 2021. She did not have the same clock-ring issue that Shrestha experienced at PSA and B.B. King. Sanders' payroll journals indicate that she had both clock rings and was paid for all but two weeks of her work with the USPS. Sanders does not dispute that she was paid properly for all but the two weeks when she could not clock in.

For the two weeks she alleges she was improperly paid (USPS Pay Period 26, Weeks 1 and 2, which was December 4-17, 2021), Sanders received pay advances[1] from the B.B. King USPS facility calculated using the time records she wrote herself and submitted. On December 23, 2021, Sanders received a $876.00 pay advance for Week 1 of PP 26 and $924.00 for Week 2 of PP 26. At the time, the USPS explained to Sanders that she would receive 65% of the wages she was owed, and that the remaining 35% of her wages would be held back for taxes and applicable withholdings. Sanders misunderstood this representation: she thought that she would get the full 35% of her wages at a later date, meaning that nothing would be withheld from her earnings.

The settlement agreement contemplates a payroll check for Sanders in the amount of $2,847.74 less the pay advances she previously received. Thus, the gross amount that Sanders will receive is $520.29, the difference between the gross amount of $2,847.74 and the $1,800.00 salary

---

[1] The USPS has an informal practice of paying its temp employees via a pay advance instead of having them wait for payroll to process their paychecks. These pay advances can quickly put money in employees' pockets during the holiday season, which is especially important due to the delay in receiving a first paycheck once federal employment starts.

advance. The parties also negotiated a compromise regarding Sanders' liquidated damages and agreed to $250.00 as liquidated damages.

## II.   Procedural history

On April 29, 2022, Shrestha filed this FLSA collective and Rule 23 class action against the USPS. Shrestha's original deadline to serve the Complaint was July 28, 2022, 90 days after filing. *See* Fed. R. Civ. P. 4(m). Shrestha served the Attorney General with a copy of the summons and Complaint on July 29, 2022. RE 14, PageID 35. But Shrestha did not request the proper summonses required to complete service on an agency or corporation of the United States under Rule 4(i)(2), which requires plaintiffs to deliver a copy of a summons and the complaint to "the United States Attorney for the district where the action was brought" or mail those documents "to the civil-process clerk at the United States attorney's office" and send a copy of those documents to both the Attorney General of the United States and the agency or corporation. *See* Fed. R. Civ. P. 4(i)(1)-(2). The Clerk issued a summons to the U.S. Attorney on October 3, 2022. RE 16, PageID 38. Shrestha served the U.S. Attorney on October 5, 2022. After Shrestha completed service on the United States, the parties began negotiating a resolution of this case. The parties reached a resolution and filed their notice of settlement on July 17, 2023. RE 34. In the year since they reached this agreement, they worked to draft the settlement agreement, which went through several different iterations. Shrestha signed the settlement agreement on February 6, 2024. Sanders signed the settlement agreement on July 9, 2024.

## III.   Law and argument

The Court should grant this motion and approve the parties' negotiated settlement agreement for three reasons, First, the settlement agreement fairly and reasonably resolves the parties' claims and defenses. Second, *bona fide* disputes exist over liability and damages. Third,

4

the settlement is fair and reasonable. Accordingly, the Court should enter an order approving the settlement.

      **A.    The proposed settlement appropriately resolves the parties' claims and defenses.**

Employees can settle and release claims under the FLSA in two ways. First, the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. See 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under § 216(b), an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Id.*

In reviewing a settlement of a private FLSA claim, the Court must scrutinize the proposed settlement for fairness and determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355; *see also Bartlow v. Grand Crowne Resorts of Pigeon Forge*, No. 11-400, 2012 WL 6707008, at *1 (E.D. Tenn. Dec. 26, 2012); *Wills v. Cellular Sales of Tenn., LLC*, No. 12-391, 2014 WL 8251539, at *1 (E.D. Tenn. Aug. 18, 2014); *Simmons v. Mathis Tire & Auto Serv., Inc.*, No. 13-2875, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015). When it appears that a settlement "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages[] that are actually in dispute," the Court should "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. Additionally, a court presiding over an FLSA suit "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

5

**B.** ***Bona fide* disputes exist over liability and damages.**

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 09-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010). The existence of a *bona fide* dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.*; *Ochs v. Modern Design, Inc.*, No. 14-635, 2014 WL 4983674, at *2 (N.D. Ohio Oct. 6, 2014).

*Bona fide* disputes exist in this case. Defendant asserted, and continues to assert, that it acted in good faith and not in willful violation of the FLSA at any time relevant to this action. The total settlement amount reflects a reasonable compromise of Plaintiffs' claimed damages. For example, Sanders alleged claims related to a two-week work period in December 2021, and Shrestha's claims relate to a four-week period in November-December 2021. The settlement amounts that the parties agreed to reflect this narrow timeframe.

Although the parties continue to firmly believe in the merits of their respective claims and defenses, given the time and expense associated with full-blown litigation and discovery, the uncertainty of collective and class action certification and dispositive motion practice, and trial, the parties agree that a compromise is appropriate at this early stage of the litigation. They desire to resolve this case by way of a negotiated settlement payment by Defendant in exchange for release of claims by Plaintiffs to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 ("Thus, when the parties [to the litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable

compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.").

### C. The settlement is fair and reasonable.

In addition to resolving a *bona fide* dispute between the parties, the settlement achieved is fair and reasonable and should be approved for at least six reasons. First, the proposed settlement arises out of an action for unpaid wages brought by Plaintiffs against their employer. While the amount Shrestha and Sanders ultimately receives varies on the amount of time they worked for the USPS without being paid, the amount in the Settlement Agreement is reasonable considering that: (1) Plaintiffs would face challenges at the Rule 23 class and FLSA collective action certification stages because of the unique nature of Shrestha and Sanders' claims; (2) the USPS's policies comply with the FLSA; (3) Plaintiffs were hourly-paid temporary employees and not highly-compensated, salaried employees; and (4) this case exposes Defendant to liability and substantial defense costs.

Second, there is no evidence of any fraud or collusion between counsel, and such fraud or collusion did not occur. *See Schneider v. Goodyear Tire & Rubber Co.*, No. 13-2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2015) (considering the risk of fraud or collusion between the parties in determining whether to approve an FLSA settlement and concluding that because the parties had engaged in court-supervised negotiations, there was no such risk). This settlement was reached as a result of arms-lengths negotiations between the parties through experienced attorneys who litigated FLSA claims against each other when the USPS' counsel was in private practice. Multiple rounds of negotiations were necessary to reach an agreement, and the length of time that passed after the parties entered their notice of settlement shows that the parties negotiated the settlement agreement and its terms in good faith.

7

Third, during the litigation and settlement of this action, Plaintiffs were represented by counsel both respected in the community and experienced in handling wage and hour collective and class actions. Plaintiffs' counsel has the experience to assess the risks of continued litigation and benefits of settlement and have done so in this action. Plaintiffs' counsel represents employees with claims against employers similar to the claims asserted in this case. Defense counsel is likewise experienced in defending similar claims. Counsel for both parties have advised their respective clients regarding the settlement, and they have recommended judicial approval: the Court should afford those recommendations some weight. *See Lynn's Food Stores*, 679 F.2d at 1354 (recognizing that courts rely on the adversary nature of a litigated FLSA case resulting in settlement as an indication of fairness).

Fourth, the range of possible recovery in this case was uncertain. The parties had divergent positions on damages components such as whether liquidated damages were appropriate under the FLSA. Fifth, the parties engaged in informal discovery during their settlement negotiations. Both sides requested and provided documents reflecting the hours Plaintiffs alleged that they worked and the hours that the USPS reflected them having worked (and the payments the USPS issued them). While the parties did not engage in formal discovery, their negotiated settlement relied on payroll and other documents from the USPS and Plaintiffs. This informal discovery allowed the parties and their experienced counsel to evaluate their claims and defenses, understand the scope of potential damages, and engage in negotiations with the mutual understanding that continuing toward formal discovery and completing dispositive motion practice would be a difficult, costly, and uncertain undertaking.

Sixth, the complexity, expense, and likely duration of the litigation if the parties did not reach a settlement weighs heavily in favor of finding that this settlement is fair and reasonable.

Without question, if the case had not settled, the parties would have spent significant time and resources answering the Complaint and completing written and deposition discovery. Similarly, if this case had not settled, the parties would have spent significant time drafting class certification and other dispositive motions, particularly on Plaintiffs' Rule 23 class action claim. After the resolution of these issues, the parties may have faced the prospect of an expensive, lengthy jury trial as well as likely appeals and post-trial motions.

Rather than take this path, the parties directed their efforts toward an early, informed, efficient resolution of Plaintiffs' claims. While a number of issues remain unresolved in this litigation, the parties' informal discovery enabled counsel to assess the respective strengths and weaknesses of their case and reach the conclusion that settlement is in the parties' best interest. The settlement eliminates the inherent risks both sides would bear if this case were to continue. Under these circumstances, the settlement is fair, reasonable, and adequate for Plaintiffs, and the Court should approve it.

### III.    Conclusion

This FLSA collective action settlement is a product of an arms-length negotiation between counsel, and it resolves a *bona fide* dispute over Plaintiffs' FLSA claims. The settlement is fair and reasonable and provides Plaintiffs with monetary relief, including portions of their alleged liquidated damages. Accordingly, the parties jointly and respectfully request that the Court approve the parties' settlement agreement and the distribution of the settlement amount to Plaintiffs in full as described above and as set forth in the settlement agreement. Furthermore, Plaintiffs' counsel requests that the Court award as reasonable the attorneys' fees and litigation costs the amount requested in the settlement agreement. Finally, the parties jointly request that the Court dismiss this case with prejudice once it approves the settlement agreement.

DATE: July 26, 2024                    Respectfully submitted,

                                                   KEVIN G. RITZ
                                                   United States Attorney

                                                   By: *s/ Audrey M. Calkins*
                                                   Audrey M. Calkins (Tenn. BPR # 030093)
                                                   audrey.calkins@usdoj.gov
                                                   Eileen Kuo (Tenn. BPR # 27365)
                                                   Eileen.kuo@usdoj.gov
                                                   Assistant United States Attorneys
                                                   167 N. Main Street, Suite 800
                                                   Memphis, TN 38103
                                                   Phone: (901) 544-4231
                                                   Fax: (901) 544-4230

                                                   COUNSEL FOR DEFENDANT
                                                   UNITED STATES POSTAL SERVICE

                                                   JACKSON SHIELDS YEISER HOLT OWEN & BRYANT

                                                   *s/ J. Russ Bryant* (with permission)
                                                   J. Russ Bryant (Tenn. BPR # 033830)
                                                   rbryant@jsyc.com
                                                   262 German Oak Drive
                                                   Memphis, TN 38018
                                                   Phone: 901-754-8001
                                                   Fax: 901-754-8524

                                                   COUNSEL FOR PLAINTIFFS
                                                   MANJU SHRESTHA AND TIANA SANDERS